```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA

GLORIA I. BURKE,                )
                                )
          Plaintiff,            )        4:06CV3194
                                )
     v.                         )
                                )
CITIGROUP, INC.,                )        MEMORANDUM AND ORDER
                                )
          Defendant.            )
                                )
```

The plaintiff has filed a motion to amend her complaint and add Citicorp National Services, Inc., ("CNS"), as a defendant. Filing 20. Citigroup objects to the plaintiff's motion to amend, and argues that the proposed Amended Complaint fails to state a claim against Citigroup. For the reasons discussed hereafter, the plaintiff's motion to amend will be granted.

<u>Procedural Background</u>

Initially, I note the plaintiff is seeking leave to add a defendant. Rule 21 of the Federal Rules of Civil Procedure states parties may be added by order of the court. The defendant has not, however, raised any objection to naming CNS as a defendant. I further note that Citigroup removed plaintiff's complaint to this forum on the basis of diversity. Based on the plaintiff's proposed amended complaint, it appears CNS is not a Nebraska corporation and does not conduct business in Nebraska.[1] Therefore, even if CNS is added as a defendant, complete diversity and subject matter jurisdiction will continue to exist.

---

[1] The proposed amended complaint does not, however, identify the state of CNS' incorporation or of its principal place of business. See 28 U.S.C. § 1332 (c)(1). The court will order the plaintiff to clarify these facts in the filed amended complaint.

As to the claims against Citigroup specifically, the plaintiff has not previously filed an amended complaint, and Citigroup has not filed a responsive pleading.  Accordingly, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, obtaining leave to file the amended complaint may not be necessary.  However, the courts are split on whether Rule 15(a) or Rule 21 applies to the specific circumstances of this case; that is, whether the plaintiff must obtain leave of the court to file a first amended complaint that adds an additional defendant when the original defendant has not yet filed a responsive pleading.  See e.g. <u>Necessity of Leave of Court to Add or Drop Parties by Amended Pleading Filed Before Responsive Pleading is Served, under Rules 15(a) and 21 of Federal Rules of Civil Procedure</u>, 31 A.L.R. Fed. 752 (1977); 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1479 (2d 1990).  As the parties have thoroughly briefed the motion assuming leave of the court is required, I shall address the merits of the plaintiff's motion for leave to amend.

<u>Allegations of the Proposed Amended Complaint</u>

The proposed amended complaint alleges:

The plaintiff, Gloria Burke and husband, Charles Burke, were the owners and shareholders of Bonanza Mobile Homes, Inc. ("Bonanza").  Bonanza was dissolved by operation of law on August 3, 1979 and its assets were transferred to the Burkes.  Charles Burke died on September 15, 1997, at which time full ownership of any assets of Bonanza were vested in the plaintiff.

Defendant Citigroup is a corporation with its principal headquarters in New York.

Defendant CNS, a wholly owned subsidiary corporation of Citigroup, was authorized to do business in Nebraska until it was dissolved on April 16, 2006 for failure to pay Nebraska's occupation tax.  It was and remains authorized to conduct business in Missouri.

Bonanza sold mobile homes from 1976 to 1978.  Buyers purchasing mobile homes on credit executed installment sales contracts with Bonanza.  Bonanza then assigned each installment sales contract to Advance Mortgage Company in exchange for legal tender, with Advance Mortgage retaining a portion of the amount owed to Bonanza in "reserve" as security on the loan in the event of a buyer's default.  In 1981, the Bonanza installment sales contracts and reserves held by Advance Mortgage were assigned to Citicorp Acceptance, Company, Inc., which later became CNS.  Bonanza was not notified of this assignment.  Beginning in the early 80's, buyers were instructed to send their loan payments to CNS.  CNS is a servicing agent for defendant Citigroup.  The funds disbursed by CNS come from Citigroup and payments made to CNS are remitted to Citigroup.

Once the installment sales contracts were fully paid, the reserves held as security were to be returned to Bonanza.  The following efforts to obtain the reserves held by the defendants have been unavailing:

- Beginning in the early 1990s, Charles Burke asked the defendants and their predecessors-in-interest to return the reserves held in escrow on loans that were fully paid.  He was initially told reserves payments would be premature since the loans were not yet paid.  He was later told reserves were owed to Bonanza, but more work and research was needed.

3

- In 2004 or 2005, plaintiff's son, Joseph Burke, was told reserves were owed but an accounting would need to be performed before any payment could be made.

- In early 2006, the plaintiff was informed by Citigroup and CNS or their agents that at least $800.00 was owed, but more work needed to be done.

In reliance on these statements, the plaintiff continued to wait to be paid, but it is now apparent the defendants are unwilling to pay the reserves. As of July 6, 1978, Advance Mortgage had reported a reserve balance of $81,562.95, none of which has ever been returned to Bonanza, its assignees or agents. All Bonanza installment sales contracts should have been paid in full by now, and any money held in reserve on contracts which have been paid in full is currently being held as the property of either Citigroup or CNS, but is actually owned by the plaintiff.

The plaintiff seeks a judgment in the amount of $81,562.95, along with interest at the rate of 12% per annum commencing when the reserves were due from defendants to plaintiff, along with attorney fees and court costs.

## Legal Analysis

Under Rule 15(a), leave to amend must be "freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962). A party should be afforded the opportunity to pursue a claim on the merits "if the underlying facts or circumstances relied upon by a plaintiff may provide be a proper subject of relief." Foman, 371 U.S. at 182. However, a motion to amend should be denied on the merits if the proposed pleading asserts clearly frivolous claims. Becker v. University of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999).

Citigroup argues the claims alleged against it in the plaintiff's proposed amended complaint are frivolous.  It argues there is no basis to file suit against Citigroup, that Citigroup's previously filed motion to dismiss placed the plaintiff on notice that no claim exists, and that plaintiff's motion to amend, which represents plaintiff's continued and frivolous effort to sue Citigroup, was filed in bad faith.  Citigroup claims it is not the proper party defendant, the plaintiff has failed to plead a basis for personal jurisdiction over Citigroup in this forum, and her claims are time-barred.

Citigroup claims the plaintiff's proposed amended complaint fails to sufficiently allege any basis for holding Citigroup liable for the conduct of CNS on a "piercing the corporate veil" theory.  The plaintiff's reply brief likewise focuses on Citigroup's potential liability as the controlling parent company and "alter ego" of CNS.  However, as explained in the Restatement of Agency:

> It is useful to distinguish situations in which
> liability is imposed on a parent because of the
> existence of the agency relation, in our common-law
> understanding of that relation, from cases in which the
> corporate veil of the subsidiary is pierced for other
> reasons of policy.  Unfortunately, however, the courts
> have not always observed the distinction between these
> two separate bases for parent's liability.

Restatement (Second) of Agency § 14M, comment (a) (1958).

The distinction between piercing the corporate veil and principal/agency theories of recovery was explained in detail in <u>Phoenix Canada Oil Co. Ltd. v. Texaco, Inc</u>., 842 F.2d 1466, 1476-77 (3d Cir. 1988).

5

> In determining whether two corporations are truly separate, significant factors to consider include adequacy of capitalization, overlapping directorates and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and subsidiary authority over day-to-day operations. . . . In that context, the concept of complete domination by the parent is decisive. . . .  The activities bearing on the issue of corporate independence need not have any particular relationship to the cause of action being asserted.
>
> There is a second theory under which a parent may be held liable for the activities of its subsidiary:  an application of general agency principles.  One corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company.  However, one corporation--completely independent of a second corporation--may assume the role of the second corporation's agent in the course of one or more specific transactions. This restricted agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside the limited agency setting. . . .  Under this second theory, total domination or general alter ego criteria need not be proven.

Phoenix Canada, 842 F.2d at 1476-77.  See also Kissun v. Humana, Inc., 267 Ga. 419, 421-422, 479 S.E.2d 751, 753-54 (1997)("There is no question that under appropriate circumstances a parent corporation can set up a subsidiary to promote the parent's purposes yet maintain a separate identity from the subsidiary and avoid liability for the subsidiary's actions. . . [T]he mere fact that one corporation is a subsidiary of another does not alone serve to insulate the parent where the evidence can establish the legal requirements of an actual or apparent agency relationship between the two corporations.").

As to the theory of piercing the corporate veil, Citigroup argues the plaintiff has not alleged her claim with sufficient specificity.  However, the plaintiff's claim against Citigroup is not based on alleged fraud.  Where, as in this case, the plaintiff's claim to "pierce the corporate veil" does not require proof of fraud, "plaintiff's alter ego allegations will not be held to the particularity requirement of Fed. R. Civ. P. 9(b).  Instead, the allegations properly are judged according to the liberal "notice pleading" standard of Fed. R. Civ. P. 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 122 (S.D.N.Y. 1996)(citing Citicorp Int'l Trading Co. v. Western Oil & Refining Co., 771 F. Supp. 600, 608 (S.D.N.Y. 1991); Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc., 915 F. Supp. 939, 942-43 (N.D. Ill. 1996); Laborers Combined Funds of Western Pennsylvania v. Ruscitto, 848 F. Supp. 598, 600-01 (W.D. Pa. 1994).  "Rule 9(b) does not apply to piercing allegations except to the extent that fraud is alleged as an element." Schwan v. CNH America LLC, 2006 WL1215395 (D. Ne. 2006).

Where fraud is not the basis of the claim, a plaintiff seeking to pierce the corporate veil must allege that the subsidiary was so dominated by the parent corporation, at least with respect to the transactions at issue, that it had no separate will of its own and that it was a mere instrumentality of its parent. Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc. 771 F. Supp. 600, 608 (S.D.N.Y. 1991).  The plaintiff may do so with a short, concise statement of fact as required under Rule 8(a) of the Federal Rules of Civil Procedure. Citicorp Intern. Trading, 771 F. Supp. at 608 (holding allegation that CITC committed alleged wrongful acts as "a mere

instrumentality of Citibank and was so dominated by Citibank as to have no will of its own or ability to answer for itself" was a sufficient statement of the facts to support a claim to pierce the corporate veil). See also Rolls-Royce Motor Cars, Inc., 929 F. Supp. at 122 (holding plaintiff sufficiently raised a claim to pierce the corporate veil where it alleged the parent corporation "dominates, controls and operates [the subsidiary] as its agency, instrumentality and alter ego, and is therefore liable for [the subsidiary's] corporate obligations," and funds were transferred from the subsidiary to escape the reach of creditors). However, a mere conclusory statement that one corporation is the "alter ego" of another is not sufficient. Schwan v. CNH America LLC, 2006 WL 1215395, *20 (D. Ne. 2006).

The plaintiff may also plead a basis for piercing the corporate veil by alleging the existence of specific factors relevant in determining that the subsidiary's separate corporate structure should be disregarded. See e.g. Schwan, 2006 WL 1215395, *20 (holding the plaintiff's allegations were "minimally sufficient" where the plaintiffs alleged defendants "blurred the lines of the independent corporate forms" and "controll[ed] the day-to-day operations" of the facility); Chicago Dist. Council, 915 F.Supp. at 943 (holding allegations of fund transfers and commingling of assets between the subsidiary and corporate defendants, loans made between these entities without the requisite formalities, and their alleged failure to operate at arms length sufficiently stated a claim to pierce the subsidiary's corporate veil); Laborers Combined Funds, 848 F. Supp. at 600 (holding plaintiff stated a claim to pierce the corporate veil by alleging the corporate shareholders failed to observe the required corporate formalities, kept inadequate corporate records, siphoned funds from the corporation to avoid

8

the claims of creditors and enhance their personal affairs, created an undercapitalized corporate entity, and used it in furtherance of wrongdoing).

The plaintiff has not alleged that Citigroup is the alter ego of CNS, that CNS is a mere instrumentality of Citigroup, or that CNS is dominated and controlled by Citigroup.  She has also failed to adequately allege the existence of factors considered in determining whether the corporate veil should be pierced.  Though the plaintiff claims that CNS' fund disbursements come from Citigroup, and that the money CNS receives is remitted to Citigroup, such conduct may occur pursuant to an arms-length agreement or principal/agent relationship between two separate entities.  Therefore this allegation does not place Citigroup on notice that the plaintiff will seek to pierce the corporate veil and hold Citigroup liable for any and all actions or inactions of CNS.  I therefore conclude the plaintiff has failed to allege a claim to pierce the corporate veil.

However, as to the principal/agency theory of recovery, the plaintiff's proposed amended complaint alleges:  CNS is a servicing agent for defendant Citigroup with respect to the Bonanza installment sales contracts; the funds disbursed by CNS are received from Citigroup and funds received from third parties by CNS are remitted to Citigroup; in early 2006, the plaintiff was informed by both Citigroup and CNS that reserve money was owed to the plaintiff; and reserve money owned by and owed to the plaintiff is being held by either Citigroup or CNS.  These factual allegations are sufficient to raise a principal/agency claim against Citigroup for the conduct of CNS in failing to

9

return reserve money owed to the plaintiff.[2]  I cannot conclude that plaintiff's proposed amended complaint asserts clearly frivolous claims against Citigroup.

Citigroup claims the motion to amend should be denied because the plaintiff's claims are barred by the statute of limitations.  I cannot discern that from the face of the proposed amended complaint.  There are no allegations stating precisely when the installment sales contracts were paid in full, and when, under the terms of any applicable contract, the reserves became due and owing to the plaintiff.  From the allegations of the proposed amended complaint, it appears such information is likely in the exclusive possession of Citigroup or CNS, and the defendant bears the burden of proving a limitations defense.

There is nothing on the face of the proposed amended complaint stating when, precisely, the plaintiff's cause of action accrued.  Moreover, the plaintiff has alleged and argued that she delayed filing suit in reliance on statements from the defendants that reserve payments would be forthcoming.  The defendant's statute of limitations affirmative defense, and the plaintiff's estoppel defense to the limitations defense, cannot properly be resolved by denying plaintiff's motion to file an amended complaint.

---

[2]If Citigroup possesses plaintiff's property and is wrongfully refusing to relinquish that property upon demand, other theories of recovery may also be applicable.  Since the parties' briefs focus on Citigroup's liability for the acts of CNS, this memorandum and order does not discuss any theories of direct liability against Citigroup arising from its independent actions or inactions.

10

Citigroup also claims the motion to amend should be denied because the plaintiff has failed to allege a basis for personal jurisdiction over Citigroup in this forum. Under Eighth Circuit law:

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state. Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts."

Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)(quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974)).

It is questionable whether Citigroup's argument can properly be raised in opposition to a motion for leave to file an amended complaint, as opposed to a motion to dismiss. See e.g. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)("A plaintiff has no obligation to allege in its complaint facts that if true would establish personal jurisdiction over the defendant. . . . Once the defendant moves to dismiss for lack of jurisdiction, however, the burden falls on the plaintiff to demonstrate jurisdiction."). However, in the interest of judicial expediency, I shall address the issue.

The Eighth Circuit has held that a court may exercise personal jurisdiction over a defendant through the acts of an agent provided the plaintiff can prove the agent was authorized to commit the acts or transactions at issue on behalf of the defendant. Romak USA, Inc. v. Rich, 384 F.3d 979, 985 (8th Cir. 2004). The plaintiff has alleged CNS acted as Citigroup's agent in servicing the Bonanza installment sales contracts. The

proposed amended complaint alleges those contracts were initially assigned by Bonanza to Advance Mortgage, which performed significant and substantial business in Nebraska from 1976 to 1980, and were later assigned to CNS, which was authorized to do business in Nebraska until it was dissolved on April 16, 2006 for failure to pay Nebraska's occupation tax.  Contacts with CNS and Citigroup demanding payment of the reserves occurred from 2004 until early 2006.  This suit was filed on June 26, 2006.  Such facts present a prima facie showing that the events underlying the plaintiff's claim arose from CNS' business conducted in Nebraska as an agent for Citigroup.  As such, the proposed amended complaint states sufficient facts to support a reasonable inference that Citigroup can be subjected to the jurisdiction of a Nebraska forum.  The plaintiff's motion to file the proposed amended complaint should not be denied for lack of personal jurisdiction.

IT THEREFORE HEREBY IS ORDERED:

1.  The plaintiff's motion to amend, filing 20, is granted.

2.  The plaintiff shall file her amended complaint on or before December 7, 2006.  The filed amended complaint shall be substantially the same as the proposed amended complaint attached to the filing 20 motion, except that the plaintiff must specifically allege the basis of federal subject matter jurisdiction over CNS in accordance with Rule 8(a)(1) of the Federal Rules of Civil Procedure.

DATED this 29th day of November, 2006.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge